UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| HOLLI M., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-1525-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Holli M. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 13).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 11. Plaintiff also filed a reply brief. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 9) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 11) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed an application for SSI on September 8, 2017, alleging disability beginning May 4, 2017 (the disability onset date), due to "(1) depression; (2) PTSD; (3) anxiety; (4) obsessive compulsive disorder; (5) attention deficit disorder; (6) ADHD; (7) bipolar disorder; and (8) sciatica." Transcript ("Tr.") 236-42, 260. Plaintiff's claim was denied initially on December 26, 2017, after which she requested an administrative hearing. Tr. 156-65, 168-70. On

November 21, 2019, Administrative Law Judge Bryce Baird (the "ALJ") conducted a video hearing from Buffalo, New York. Tr. 32. Plaintiff appeared and testified from Olean, New York, and was represented by Kelly Laga-Sciandra, an attorney. *Id*. Josiah L. Pearson, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on February 14, 2020, finding that Plaintiff was not disabled. Tr. 32-46. On September 5, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's February 14, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## <u>LEGAL STANDARD</u>

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his February 14, 2020 decision:

1. The claimant has not engaged in substantial gainful activity since September 8, 2017, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: bursitis, vascular disease, minimal degenerative disc disease of the lumbar spine, attention deficit hyperactivity disorder ("ADHD"), anxiety, bipolar disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 416.967(c)[1] such that she can lift and carry on occasion up to 50 pounds, and lift and carry frequently up to 25 pounds. She could sit for up to six hours in an eight-hour day. She could stand or walk for up to six hours in an eight-hour day. She would be limited to no climbing of ladders, ropes or scaffolds. She could perform frequent stooping. She could perform occasional kneeling, occasional crouching, and occasional crawling. She would be limited to simple, routine tasks that can be learned after a short demonstration or within 30 days; work that would allow her to be off task approximately 5% of the work day in addition to regularly scheduled breaks; work that would not require more than simple work related decisions; work that would require no more than superficial interaction with the public, and up to occasional interaction with coworkers; work that does not require teamwork such as work on a production line; and work which would require doing the same tasks every day with little variation in work location, hours or tasks..

5. The claimant is capable of performing past relevant work as a dipper (DOT# 726.687-022). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since September 8, 2017, the date the application was filed (20 CFR 416.920(f)).

Tr. 32-46.

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he or she is determined to also be able to do sedentary and light work. 20 CFR 416.967(c).

Accordingly, the ALJ determined that, based on the application for supplemental security benefits protectively filed on September 8, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 46.

## ANALYSIS

Plaintiff asserts two points of error. First, Plaintiff argues that the Appeals Council failed to properly evaluate "new and material" evidence from Plaintiff's treating mental health provider Linda Baker, LCSW ("Ms. Baker), evidence which, according to Plaintiff, undermined the ALJ's findings. *See* ECF No. 9-1 at 1, 15-20. Plaintiff next argues that, because the ALJ assessed Plaintiff with a "highly-specific" mental RFC based on his own lay interpretation of raw medical data, he failed to base Plaintiff's mental RFC on substantial evidence. Specifically, Plaintiff complains that the ALJ found the opinion of consultative examiner Susan Santarpia, Ph.D. ("Dr. Santarpia") to be persuasive but failed to reconcile her opinion with Plaintiff's mental RFC. *See* ECF No. 9-1 at 1, 20-30.

The Commissioner argues in response that the Appeals Council reasonably concluded that the additional evidence submitted after the Plaintiff's hearing did not show a reasonable probability that it would change the outcome of the ALJ's decision. *See* ECF No. 11-1 at 19-23. Further, argues the Commissioner, the ALJ's finding that Plaintiff retained the RFC to perform a range of simple and routine work with no more than occasional interaction with others was supported by substantial evidence, including Plaintiff's largely normal mental status examination findings, conservative mental health treatment, and robust activities of daily living, as well as the opinions of two psychiatric consultative examiners. *See id*. at 10-19.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ adequately considered the evidence of record, including the medical opinion evidence, the treatment notes, and objective findings, as well as Plaintiff's conservative treatment and wide range of activities, and the ALJ's RFC determination was supported by substantial evidence.

The Court notes that Plaintiff does not challenge the ALJ's consideration of her physical impairments (*see* ECF No. 9-1 at 15-29); thus, the Court declines to address the ALJ's physical RFC findings in this opinion. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal); *see also Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

On March 23, 2017, Plaintiff underwent a psychiatric consultative examination with Kristina LaBarbera, Psy.D. ("Dr. LaBarbera"). Tr. 342-46. On mental status examination, Plaintiff's affect was dysphoric, and her mood was reported as mildly dysthymic and anxious. Tr. 343-44. Dr. LaBarbera opined that Plaintiff had no limitations in her ability to understand, remember, and apply simple and complex directions and instructions; use reason and judgment to make work-related decisions; interact adequately with supervisors, co-workers, and the public; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; maintain personal hygiene and appropriate attire and be aware of normal hazards and take appropriate precautions. Tr. 345. She was moderately limited in her ability to regulate emotions, control behavior, and maintain well-being; difficulties were caused by

6

distractibility; and these problems did not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis. *Id*. Dr. LaBarbera diagnosed Plaintiff with bipolar type II disorder, PTSD, alcohol abuse, active, cocaine abuse, sustained remission, and cannabis abuse, sustained remission. *Id*.

Dr. Santarpia conducted a psychiatric consultative examination on November 29, 2017. Tr. 397-401. On mental status examination, Plaintiff's affect was dysphoric, her mood was dysthymic, and her insight and judgment were fair. Tr. 398-99. Dr. Santarpia opined that Plaintiff was able to understand, remember, and apply simple and complex directions and instructions; use reason and judgment to make work-related decisions; interact adequately with supervisors, coworkers, and the public; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions within normal limits. Tr. 400. Mild impairment was demonstrated in regulating emotion, controlling behavior, and maintaining well-being; difficulties were caused by lack of psychotropic medication for bipolar and anxiety and continued use of alcohol, which may exacerbate symptoms; and until her psychiatric and substance abuse problems were better stabilized, these problems may interfere with her ability to function on a daily basis. *Id*. Dr. Santarpia diagnosed Plaintiff with "rule out attention deficit hyperactivity disorder, bipolar disorder, posttraumatic stress disorder, rule out alcohol dependence/abuse, current, cannabis dependence/abuse, sustained remission, and cocaine dependence/abuse, sustained remission." *Id*.

On May 3, 2017, A. Dipeolu, Ph.D. ("Dr. Dipeolu"), reviewed Plaintiff's file until that date and opined that there was insufficient evidence to establish psychiatric impairment for the adjudicative time period for the Title II claim. Tr. 127-28). Dr. Dipeolu also opined that Plaintiff's psychiatric impairments were non-severe. *Id*.

On September 11, 2017, Plaintiff treated with Robert Maiden, Ph.D. ("Dr. Maiden") for a psychiatric consultation. Tr. 382-388. Thereafter, Plaintiff treated with Dr. Maiden for individual counseling on October 11, 2017, November 6, 2017, November 20, 2017, and December 18, 2017. Tr. 389, 540-542. On December 18, 2017, Dr. Maiden informed Plaintiff that his practice was closing and referred her to another provider. Tr. 542.

On December 12, 2017, H. Tzetzo, M.D. ("Dr. Tzetzo"), reviewed Plaintiff's file until that date and opined that Plaintiff's mental impairments were non-severe, and she should be able to handle normal work pressures. Tr. 149-50.

On February 22, 2018, Plaintiff underwent an initial psychosocial assessment with Laurel Stanley, RN, LCSW-R ("Ms. Stanley"), for treatment of depression and anxiety. Tr. 530-36. Ms. Stanley assessed persistent depressive disorder, social anxiety disorder, and binge-eating disorder. Tr. 532.

### A. Plaintiff's Additional Evidence Would Not Change the Outcome of the Decision.

Plaintiff's first point of error argues that the Appeals Council improperly rejected the additional evidence from Ms. Baker, as it directly undermined the ALJ's finding. *See* ECF No. 9-1 at 15-20. The record reflects that Plaintiff submitted additional records from Ms. Baker on August 19, 2020, consisting of a letter dated June 17, 2020, summarizing Plaintiff's treatment and further opining on Plaintiff's limitations for work.[2] Tr. 8-13. The Appeals Council found that this evidence did not show a reasonable probability that it would change the outcome of the decision, and therefore, did not exhibit the additional evidence. Tr. 2.

As an initial matter, the Court finds the new evidence submitted to the Appeals Council after the ALJ's decision is part of the administrative record for judicial review when the Appeals

---

[2] Included with the letter were several pages of narrative, ostensibly authored by Ms. Baker, containing a page-by-page, paragraph-by-paragraph examination of the ALJ's decision. Tr. 14-26. The Court finds this portion of the new evidence immaterial to the Court's analysis and, therefore, declines to consider it.

Council denies review of the ALJ's decision. *Perez v. Chater*, 77 F.3d at 45 (holding that new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision).

The regulations expressly authorize claimants to submit new and material evidence[3] to the Appeals Council without a "good cause" requirement, as long as it relates to the period on or before the ALJ's decision. *Id*. (citing § 404.970(b) and § 416.1470(b)). The Appeals Council evaluates the entire record, including any new and material evidence submitted if it is chronologically relevant, to determine if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record. *See* 20 C.F.R. § 404.970(b); *Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014). When the Appeals Council denies review, however, regardless of whether a claimant presents additional evidence or only argument, it is the ALJ's decision that becomes the final decision of the Commissioner subject to judicial review. *See* 20 C.F.R. § 404.981; *see also Pollard v. Halter*, 377 F.3d 183, 192 (2d Cir. 2004) (comparing an Appeals Council's denial of a request for review to a denial of *certiorari* which carries no import as to the merits of a case).

Accordingly, when the Appeals Council denies review, this Court must review the ALJ's decision in the context of the entire administrative record, including any new evidence, to determine if the ALJ's decision is supported by substantial evidence, rather than review the Appeals Council's denial. *See Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015). The relevant inquiry is not whether the Appeals Council properly determined whether the evidence was new

---

[3] Evidence is "new" when it has not been considered previously in the administrative process. *See Ovitt v. Colvin*, 2014 WL 1806995, *3 (N.D.N.Y. May 7, 2014). New evidence is "material" where it is both relevant to the plaintiff's condition during the relevant time period, and probative. *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id*.

and material, but whether the ALJ's decision is supported by substantial evidence in light of the additional information submitted to the Appeals Council. *Id*. In other words, a reviewing court must determine whether the submitted evidence "add[s] so much as to make the ALJ's decision contrary to the weight of the evidence." *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010); *see Bushey*, 552 F. App'x at 98 (noting that new evidence "did not alter the weight of evidence so dramatically as to require the Appeals Council to take the case").

Plaintiff first complains that the Appeals Council rejected this new evidence without "justification" and offered an explanation in only "cursory, formulaic language." *See* ECF No. 9-1 at 17-18. However, as noted above, the regulations do not require the Appeals Council to provide an elaborate explanation when it evaluates additional evidence presented. 20 C.F.R. § 416.1567 (requiring the Appeals Council to notify the party of its action and making no mention of information that must be contained in the denial notice). Nor is such an elaborate explanation required under the Hearings and Appeals Litigation Law Manual ("HALLEX"). As explained above, the Appeals Council's denial of a request for review does not amount to consideration on the merits, but rather, it is analogous to denial of *certiorari*. *Pollard*, 377 F.3d at 192. Therefore, the Appeals Council was not required to specify why it found that the additional evidence from Ms. Baker did not show a reasonable probability that it would change the outcome of the ALJ's decision.

In any event, the Court has reviewed the entire record, including the additional evidence, and finds that the new evidence, when considered in light of the record as a whole, "does not add so much as to make the ALJ's decision contrary to the weight of the evidence." *Rutkowski*, 368 F. App'x at 229. As noted above, on June 17, 2020, Ms. Baker wrote a letter summarizing Plaintiff's treatment history with her.  Tr. 8-13. Ms. Baker stated she had been seeing Plaintiff approximately every two weeks since September 11, 2018, and Plaintiff had attended a total of 35 sessions

through the date of the letter. Tr. 8. Ms. Baker opined that Plaintiff was unable to perform work activities at a competitive level due to her limited ability to interact with others, along with her physical limitations. Tr. 12.

Upon review, the Court finds that Ms. Baker's newly submitted opinion and summary of treatment visits does not undermine the reasons articulated by the ALJ for finding Ms. Baker's earlier opinion not persuasive. Ms. Baker's February 2019 opinion (Tr. 488-93) assessed similar limitations to her June 2020 opinion (Tr. 8-11), both essentially opining that Plaintiff's had multiple and limiting mental restrictions related to work. Plaintiff argues that the newly submitted material would have changed the outcome because it would have counteracted the ALJ's finding that Ms. Baker's opinion was not persuasive due to the short duration of treatment (only five months). *See* ECF No. 9-1 at 19-20 (citing Tr. 43-44). However, contrary to Plaintiff's argument, the ALJ cited other reasons for finding Ms. Baker's opinion not persuasive—not just the short duration of the treatment relationship. Tr. 44.

As the ALJ explained, in addition to finding Ms. Baker's limitations not persuasive because they were based on only five months of treatment, he also found that her limitations were not supported by the normal mental status examination findings of Drs. LaBarbera and Santarpia (Tr. 343-45,398-400); the generally normal psychiatric examinations by Dr. Maiden and Ms. Stanley (Tr. 386-88, 459, 467, 531); Plaintiff's routine and conservative treatment (Tr. 39-42); and her robust activities of daily living, including self-employment cleaning houses, socializing, spending time with family, attending to housework, shopping and personal care (Tr. 342, 345, 399-400). Tr. 44. The ALJ also noted that Plaintiff's attorney reported having some difficulty obtaining additional treatment notes from Ms. Baker, as a result of which the ALJ kept the record open for Plaintiff's counsel to procure treatment notes; none were submitted. Tr. 44, 58, 103. However, as

the ALJ explained, he found Ms. Baker's opinion not persuasive because of the reasons noted above, not because of the lack of records. Tr. 44.

While Ms. Baker's June 2020 opinion was provided after a longer treatment relationship, nothing in the new material undermines the other reasons the ALJ found Ms. Baker's February 2019 opinion unpersuasive. Furthermore, Plaintiff does not claim, nor does Ms. Baker opine, that Plaintiff's condition significantly deteriorated since the February 2019 opinion. For all these reasons, the Court finds there was not a reasonable probability that the new material would have changed the outcome of the ALJ's decision. 20 C.F.R. § 416.927(d)(3).

### B.  Substantial Evidence Supports the ALJ's RFC Determination.

Plaintiff next argues that the ALJ's RFC finding was not supported by substantial evidence. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between

properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1527, 416.927. Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed her claim on September 8, 2017, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered; the new regulations also alter the way the ALJ discusses medical opinions in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when

articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the

Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

In this case, the ALJ reasonably found that, while Plaintiff's ADHD, anxiety, and bipolar disorder were severe impairments, they were not as severe as Plaintiff alleged. Tr. 38-39. As noted above, the ALJ discussed that Plaintiff's treatment for her psychiatric symptoms was routine and conservative, with Plaintiff only receiving ADHD medication and treatment from her primary care provider and therapy with Ms. Stanley. Tr. 39-42. The ALJ also considered that Plaintiff took medication only for ADHD and refused other psychotropic medications despite recommendations from her medical provider. Tr. 39-41, 506. As previously discussed, the ALJ also considered Plaintiff's mostly normal mental status examinations throughout the entire relevant period, despite the absence of any medication for her anxiety or bipolar disorder. Tr. 39-41, 355, 358, 363, 508, 511, 531.

The ALJ also discussed in detail Plaintiff's evaluation with treating psychologist Dr. Maiden and her psychiatric consultative examinations with Drs. LaBarbera and Santarpia. Tr. 41, 342-46, 382-92, 397-401. While Plaintiff reported numerous complaints to Dr. Maiden in September 2017, she also reported she was working cleaning other people's houses. Tr. 41, 389. Mental status examination showed that Plaintiff was cooperative and demonstrated appropriate behavior. Tr. 41, 387.

In March 2017, Plaintiff reported symptoms of insomnia, depression, social withdrawal, irritability, and concentration issues to Dr. LaBarbera, but she also endorsed the ability to perform a wide range of daily activities including cooking, cleaning, laundry, personal care, driving, using public transportation independently, having friends and family, and socializing. Tr. 41, 342, 345. On mental status examination, Plaintiff had a dysphoric affect and she reported that her mood was dysthymic and anxious, but the remainder of her mental status examination was normal with good

insight and judgment, intact attention, concentration, and memory, and average intellectual functioning. Tr. 41, 344.

The ALJ also discussed Plaintiff's consultative examination with Dr. Santarpia, where Plaintiff again reported problems with sleep, depression, crying spells, dysphoric mood, and reckless behavior, but her mental status examination was mostly normal, including intact attention, concentration, and memory, fair insight and judgment, and average intellectual functioning. Tr. 41, 398-99. Plaintiff also endorsed a wide range of activities of daily living including socializing with friends, walking for exercise, gardening, going out, using a computer, and reading. Tr. 41, 399-400.

In considering the persuasiveness of the medical opinions, the ALJ reasonably found Dr. Santarpia's November 2017 opinion to be persuasive. Tr. 43, 397. Dr. Santarpia opined that Plaintiff was able to understand, remember, and apply simple and complex directions and instructions; use reason and judgment to make work-related decisions; interact adequately with supervisors, coworkers, and the public; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; maintain personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions within normal limits. Tr. 400. Dr. Santarpia further opined that Plaintiff had mild impairment in regulating her emotions, controlling her behavior, and maintaining well-being, but that her difficulties were caused by lack of psychotropic medication for bipolar and anxiety, and continued use of alcohol. *Id*. The ALJ noted that Dr. Santarpia's opinion on Plaintiff's limitations was supported by the longitudinal record, as well as consistent with her own clinical findings. Tr. 43, 399-400. *See* 20 C.F.R. § 416.920b(c)(1) (supportability) and § 416.920b(c)(2) (consistency).

In addition, a consultative physician's opinion (such as that of Dr. Santarpia) may serve as substantial evidence in support of an ALJ's decision if the opinion is supported by evidence in the

record, as it is here. *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)); *see also Lewis v. Colvin*, 548 F. App'x 675, 677-78 (2d Cir. 2013) (affirming ALJ's decision where ALJ gave more weight to consulting physician's opinion than treating source opinion); *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (ALJ reasonably gave more weight to the opinion of consultative examiner than treating source opinion).

The ALJ also considered consultative examiner Dr. LaBarbera's March 2017 opinion that Plaintiff would have no limitations in applying complex directions and instructions; could interact adequately with others; sustain concentration; and perform tasks at a consistent pace. Tr. 42, 345. However, the ALJ found Dr. LaBarbera's opinion to be not persuasive, because "[Plaintiff's] symptoms would seem to preclude an ability to engage in complex tasks on a sustained basis. Tr. 42.

The ALJ also considered the opinion of state agency reviewing psychiatric consultant Dr. Dipeolu and similarly found it not persuasive. Tr. 42. Dr. Dipeolu opined that Plaintiff had only nonsevere psychiatric impairments, but, as the ALJ explained, Dr. Dipeolu's assessment was not persuasive because the record supported a finding that Plaintiff had severe psychiatric impairments. Tr. 42, 128, 137-38. *See* 20 C.F.R. § 416.913a(b)(1) (ALJs are not required to adopt prior administrative medical findings but they must still consider this evidence in accordance with the Commissioner's regulations as appropriate).

Finally, as discussed above, the ALJ considered Ms. Baker's opinion that Plaintiff was seriously limited in almost every ability to do work-related activities in a regular work setting. Tr. 43-44. For all the reasons previously discussed—notably, Plaintiff's unremarkable or only mild examination findings, her routine and conservative treatment, and her robust activities of daily living—the ALJ reasonably found Ms. Baker's assessment not persuasive. Tr. 44.

Plaintiff also argues that the ALJ erred by failing to reconcile the mental RFC with Dr. Santarpia's opinion, "the only opinion the ALJ found persuasive" and improperly assessed a "highly specific RFC that was based on his own lay interpretation of raw medical data." *See* ECF No. 9-1 at 20-29 (citing Tr. 38). Plaintiff's arguments are meritless.

Plaintiff complains that the ALJ's mental RFC was "clearly completely inconsistent" and "far more limiting" than Dr. Santarpia's opinion, the only mental opinion the ALJ found persuasive. *See* ECF No. 9-1 at 21-23. However, Plaintiff does not articulate how she was harmed by a more restrictive mental RFC. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (holding that agency reconsideration is not required when, in the absence of error, the record would still dictate the same conclusion); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination") (internal citations omitted)).

As noted, Dr. Santarpia's opinion assessed no limitations to only mild limitations—fewer work-related limitations than assessed by the ALJ in his RFC finding. Tr. 38, 400. However, courts in this circuit, including this Court, have found that mild and even moderate limitations in mental functioning are consistent with an RFC for simple, unskilled work. *See McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (moderate limitations in social functioning and concentration, persistence and pace consistent with an RFC for unskilled work); *Zabala*, 595 F.3d at 407-11 (moderate limitations in work related functioning consistent with the ability to perform unskilled work, including carrying out simple instructions, dealing with work changes, and responding to supervision); *Mayer v. Comm'r of Soc. Sec.*, No. 18-CV-0062, 2019 WL 2266795, at *5 (W.D.N.Y. May 28, 2019) ("The Second Circuit has repeatedly held that 'moderate' limitations do not preclude a plaintiff's ability to perform unskilled work.") (collecting cases); *West v. Berryhill*, 298 F. Supp. 3d 577, 579 (W.D.N.Y. April 9, 2018) (finding opinion of "moderate"

limitations in attention and concentration consistent with RFC that includes limitation to maintaining concentration and focus for up to two hours at a time) (collecting cases).

Dr. Santarpia opined that Plaintiff was able to understand, remember, and apply simple and complex directions and instructions, and sustain concentration and perform a task at a consistent pace (Tr. 400), while the ALJ's RFC finding limited Plaintiff to simple, routine tasks that could be learned after a short demonstration or within 30 days, work that did not require more than simple work-related decisions and doing the same tasks every day with little variation (Tr. 38). Dr. Santarpia opined that Plaintiff could interact adequately with supervisors, coworkers, and the public (Tr. 400), but the ALJ's RFC finding limited Plaintiff to no more than superficial interaction with the public, up to occasional interaction with coworkers, and work not involving teamwork (Tr. 38). Thus, Dr. Santarpia opined that Plaintiff was less limited in terms of social interaction than the RFC finding. "[T]he fact that the ALJ's RFC did not perfectly match [a medical] opinion, and was in fact more restrictive than that opinion, is not grounds for remand." *Castle v. Colvin*, 2017 WL 3939362, *3 (W.D.N.Y. Sept. 8, 2017); *see also Richardson v. Colvin*, 2016 WL 3179902, *8 (W.D.N.Y. June 8, 2016) (rejecting claimant's argument that ALJ improperly substituted his opinion for competent medical opinion in determining claimant could perform light work; record contained examining physician's opinion that claimant had a "mild limitation" on lifting and carrying).

Plaintiff next argues that the ALJ's highly specific mental RFC was based on his own interpretation of the raw medical data, as it did not match any opinion evidence of record. *See* ECF No. 9-1 at 23-26. However, Plaintiff's argument wrongly presumes that RFCs are medical determinations, and thus, outside the ALJ's expertise. As explained above, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*,

681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a); 20 C.F.R. §§ 404.1513(a)(1), (4), 416.913(a)(1), (4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

Plaintiff also argues that the ALJ's finding that she would be off task for 5% of the workday was "too specific," and the ALJ could not have reached such a specific finding without relying on a medical opinion. *See* ECF No. 9-1 at 26-28. However, the fact that the ALJ assigned a particular percentage does not necessarily undermine the fact that the ALJ's finding was supported by substantial evidence. *See Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016). In *Johnson*, the plaintiff challenged the ALJ's RFC finding that he would be no more than 10% slower than average. *Id.* (citing *Cosnyka v. Colvin*, 576 Fed. App'x 43, 46 (2d Cir. 2014). However, the Second Circuit rejected that argument, clarifying that the problem in *Cosnyka* was not the lack of tracking language, but rather that there was "no evidentiary basis" for that limitation. *Id.* Thus, Plaintiff's reliance on *Johnson* is likewise misplaced.  *See* ECF No. 9-1 at 26-28.

Here, despite the fact that no physician assessed any specific off-task limitation percentage, the ALJ explained that he included an off-task limitation of 5% based on evidence in the record documenting Plaintiff's difficulty staying on task. Tr, 41-42. For example, Plaintiff testified that she had difficulty with her focus even while taking Adderall. Tr. 86. Dr. LaBarbera noted that Plaintiff's difficulties regulating emotions, controlling her behavior, and maintaining her well-being were caused by distractibility. Tr. 345. Ms. Baker opined that Plaintiff was seriously limited

21

in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 490. Conversely, Dr. Santarpia opined that Plaintiff could sustain an ordinary routine and regular attendance at work. Tr. 400.

Plaintiff also endorsed the ability to shop, manage her own money, drive a car, take public transportation, watch television, and surf the internet (Tr. 345, 348), all of which support the ALJ's finding that Plaintiff would not be off task more than 5% of the time in a workday. Thus, the record contained varying evidence on Plaintiff's ability to stay on task and the ALJ appropriately weighed the different evidence in concluding that Plaintiff would be off task 5% of the time during a normal workday.

While Plaintiff might prefer that the ALJ had found a greater off-task limitation, the ALJ's ultimate finding that she would not need to be more than 5% off task has evidentiary basis in the record, as discussed above. *See Dominique M. v. Comm'r of Soc. Sec.*, No. 20-CV-01247, 2021 WL 3931141, at *4 (W.D.N.Y. Sept. 2, 2021) (finding that although no medical source in the record stated plaintiff would be off task a specific percentage of the workday, the ALJ properly explained he included an off-task limitation to account for position changes and concentration difficulties that plaintiff may have as a result of her pain or pain medication.); *Lesanti v. Comm'r of Soc. Sec.*, 2020 WL 500986, *6 (W.D.N.Y. 2020) ("[t]he fact that the ALJ afforded [p]laintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand"). Furthermore, Plaintiff here has not shown that she required more than a 5% off-task limitation, as was her burden to show. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (explaining that plaintiff had a duty to prove a more restrictive RFC than the ALJ found). After considering the record, the ALJ reasonably assessed a 5% off-task limitation in his

RFC finding. Accordingly, the Court finds no merit to Plaintiff's challenge to the off-task limitation assessed by the ALJ.

Finally, contrary to Plaintiff's argument that the ALJ should have attempted to obtain additional opinion evidence (*see* ECF No. 9-1 at 29-30), it is Plaintiff who is ultimately responsible for providing evidence to support her claim of disability. *See* 42 U.S.C. § 423(d)(5)(A); *see* 20 C.F.R. § 416.912(a) ("you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"); 20 C.F.R. § 416.912(c) ("you must provide medical evidence showing that you have an impairment(s) and how severe it is"). Here, the record contained sufficient evidence from which the ALJ could assess Plaintiff's RFC, including two psychiatric consultative examinations. Tr. 342-46, 397-401. *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (citing 20 C.F.R. § 416.913(b)(6)). Furthermore, the ALJ ensured that the record remained open for Plaintiff to submit additional records from Ms. Baker, which Plaintiff failed to do until after the ALJ rendered his decision. Tr. 55-56, 103. Therefore, the ALJ did not fail to develop the record, and substantial evidence supports the ALJ's RFC finding.

Based on the foregoing, the ALJ properly analyzed the medical opinions of record in accordance with the Commissioner's regulations and properly assessed Plaintiff's RFC. *See* 20 C.F.R. § 416.946(c) (the responsibility for determining a claimant's RFC rests solely with the ALJ); *see also Richardson*, 402 U.S. at 399 (it is within the sole province of the ALJ to weigh all evidence and resolve material conflicts); *see Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (it is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon "adequate findings supported by evidence having rational probative force"). In addition to the opinion evidence, the ALJ's RFC determination was supported by Plaintiff's

normal examination findings, her conservative treatment, and her significant activities, including the ability to do some work during the relevant period. Accordingly, the Court finds no error.

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the medical opinion evidence, the treatment notes, and the objective findings, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED**. Plaintiff's

Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

 **IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE